NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA | Criminal No.: 12-CR-475 (CCC) |
|---|---|
| v. | OPINION |
| MARYAM JAFARI, | |
| Defendant. | |

**CECCHI, District Judge.**

## I.  INTRODUCTION

This matter comes before the Court by way of the motion of Defendant Maryam Jafari ("Defendant") for Bail Pending Appeal. ECF No. 155. The Court has carefully considered the submissions made in support of and in opposition to the instant motion. Based on the reasons that follow, Defendant's Motion for Bail Pending Appeal is denied.

## II.  BACKGROUND

Because the Court writes only for the parties, the Court will recite only the facts necessary to provide context for the instant motion. Defendant was charged, via a three-count superseding indictment returned on September 14, 2012, with knowingly and willfully soliciting and receiving kickbacks from Orange Community M.R.I. "in return for referring patients to [Orange Community M.R.I.] for the furnishing and arranging for the furnishing of items and services for which payment may be made in whole or in part under a Federal health care program," in violation of 42 U.S.C. § 1320a-7b(b)(1)(A) (the "Federal Healthcare Anti-Kickback Statute" or the "Anti-Kickback Statute") and 18 U.S.C. § 2. Count One charged the Defendant

1

with conspiracy to violate the Anti-Kickback Statute from in or about September 2010 to in or about December 2011. Counts Two and Three charged the Defendant with knowingly and willfully soliciting and receiving kickbacks in violation of the Anti-Kickback Statute on specific dates—November 22, 2011 and December 6, 2011, respectively. See Superseding Indictment, ECF No. 22.

The Defendant's first trial ended on December 6, 2012 in a mistrial, as the jury was unable to reach a unanimous verdict. Following a second jury trial, on February 4, 2014, the jury returned a unanimous verdict of guilty on all three counts. Jury Verdict, ECF No. 136.

On June 18, 2014, the Court sentenced the Defendant to a total term of imprisonment of 21 months. ECF No. 140. Defendant appealed her conviction on June 23, 2014 and filed the instant motion to stay the commencement of her sentence pending appeal on November 6, 2014, ECF No. 155. The Government has opposed the motion. See Opp. Br., ECF No. 168. The Defendant's surrender date has been delayed during the pendency of this motion.

### III. LEGAL STANDARD

This Court must order that "a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . be detained," unless the Court finds the following:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of another person or the community if released . . .; and
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>   i. reversal,
>   ii. an order for a new trial,
>   iii. a sentence that does not include a term of imprisonment, or
>   iv. a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b). These requirements are satisfied if the Defendant proves:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
> (2) that the appeal is not for purpose of delay;
> (3) that the appeal raises a substantial question of law or fact; and
> (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

United States v. Miller, 753 F.2d 19, 24 (3d Cir. 1985). To determine that the question raised on appeal is "substantial," the Court must find "that the significant question at issue is one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." Id. at 23. In addition, the Court must find that the issue is "sufficiently important to the merits that a contrary appellate ruling is likely to require reversal or a new trial." Id. The Court need not predict the probability of reversal; rather, the phrase "likely to result in reversal or an order for a new trial" goes to "the significance of the substantial issue to the ultimate disposition of the appeal." Id. Because a substantial question of law or fact may nonetheless be harmless or have no prejudicial effect in the circumstances of a particular case, in order to find that reversal or a new trial is likely, the Court must conclude "that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." Id.

## IV. DISCUSSION

There is no indication at this point that the Defendant is a flight risk or a danger to the community, or that Defendant's appeal is for the purpose of delay. See Def.'s Br. 8-10; Opp. Br. 3. Nonetheless, the Court must consider (1) whether Defendant's appeal raises substantial questions of law or fact and, if so, (2) whether a decision favorable to Defendant on any of those questions on appeal is likely to result in reversal or a new trial. Miller, 753 F.2d at 24.

Defendant contends that she will raise on appeal three issues that present substantial

3

questions of law or fact, and that these questions are likely to result in reversal of her conviction or the granting of a new trial if decided in Defendant's favor. Analyzing each of the issues in turn, the Court finds that the Defendant's appeal does not raise substantial questions of law or fact. Moreover, two of the arguments that Defendant plans to raise on appeal were already raised and rejected by the Third Circuit in an appeal in a related case. See United States v. Onyenso, No. 14-3111, 2015 WL 3941446 (3d Cir. June 29, 2015).

### A. Batson Challenge

During jury selection, Defendant's trial counsel raised an Equal Protection challenge to the alleged removal of prospective jurors based on race pursuant to Batson v. Kentucky, 476 U.S. 79 (1986). See Trial Tr. 176-199, Jan. 13, 2014. Defendant's trial counsel argued that the Government had improperly used peremptory challenges to exclude two African-American women and one Hispanic woman from the jury, and requested that the Court grant a mistrial. Id. at 176-77. After hearing arguments and receiving written briefing on the Batson challenge, the Court denied Defendant's request for a mistrial. See Trial Tr. 176-199, Jan. 13, 2014; Trial Tr. 1-18, Jan. 14, 2014; Def.'s Br. Supp. Batson Mot., ECF No. 110; Gov.'s Br. Opp. Batson Mot., ECF No. 111. Defendant now contends that "the Third Circuit could reasonably come to a different conclusion than this Court in deciding Dr. Jafari's Batson motion." Def.'s Br. 18.

There is a three-step process established for addressing a Batson challenge:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

Holloway v. Horn, 355 F.3d 707, 720 (3d Cir. 2004) (citing Miller-El v. Cockrell, 537 U.S. 322, 328 (2003)). The parties disputed whether the Defendant had met her burden of establishing a

*prima facie* case of discrimination—by pointing to the exclusion of two African-American venirepersons and one Hispanic venireperson when the remaining pool of potential jurors contained members of both of those minority groups. See Trial Tr. 13-14, Jan. 14, 2014. The Government then proffered race-neutral reasons for the peremptory challenges at issue, and the Court moved directly to the question whether the defendant had shown purposeful discrimination. See Holloway, 355 F.3d at 723-24 ("[T]he question whether a prima facie case has been established becomes moot, and thus need not even be addressed, when the prosecutor provides explanations for the strikes despite the absence of a request from the trial court.").

At issue were the Government's challenges to Dawna Elattar, an African-American venireperson, Ninfa Rosas, a Hispanic venireperson, and Era Adebamowo, an African-American venireperson. The Government contended that they challenged Ms. Elattar for two reasons: (1) because she was a surgical technician and former nurse's attendant, which the Government believed would create a bias against the Government in the prosecution of a doctor; and (2) because her husband had been deported and they feared this would create bias against the Government. As to Ms. Rosas, the Government asserted they were concerned, based on her lack of memory as to where her mother worked and details of her prior jury service—see Trial Tr. 83-85, Jan. 13, 2014—that she would not be able to understand and follow the Government's case. Finally, the Government indicated that they challenged Ms. Adebamowo because she also worked in the health-care industry and because her six-year-old son had been murdered, and the Government worried that this juror would thus view the Government's case against the Defendant as less serious in comparison with her family's experience with crime. Trial Tr. 176-199, Jan. 13, 2014. In arguing that these reasons were pretextual, the Defendant contended that others in the healthcare industry were not challenged by the Government, and that Ms. Rosas "had apparently been deemed

5

able enough in the past and of enough intelligence to be a juror." Id. The Court found that the Government's race-neutral reasons for their challenges to all three prospective jurors were credible and not a pretext for racial discrimination, and that therefore the Defendant had not met her burden of showing purposeful discrimination. Trial Tr. 15-16, Jan. 14, 2014.

On appeal, this Court's finding as to discriminatory intent will be "reviewed only for clear error because trial judges are best-positioned to evaluate the credibility of prosecutors' race-neutral explanations . . . ." United States v. Baskerville, 448 F. App'x 243, 247 (3d Cir. 2011) (citing Snyder v. Louisiana, 552 U.S. 472, 477 (2008)). Defendant argues in the instant motion that the Third Circuit "could reasonably come to a different conclusion than this Court," by finding that a Batson violation occurred. Def.'s Br. 16-18. Defendant essentially reiterates trial counsel's arguments that the Government's reasons for challenging Ms. Elattar and Ms. Adebamowo were pretextual because the Government did not challenge other jurors who had ties to the healthcare industry. Id. Defendant only adds the argument that, as to the Government's additional reason for challenging Ms. Adebamowo because her young son was murdered, one other juror had a friend "involved in" an assault and a friend "involved in" a murder, and another juror's home had been burglarized. Def.'s Br. 16. The Court sees no novel issue that would disturb the Court's finding that the Government's proffered reasons were credible and non-pretextual.[1] Nor does Defendant present a fairly doubtful question as to whether this Court's finding was clear error. See United States v. Casper, 956 F.2d 416, 419 (3d Cir. 1992) ("Where there are two permissible views of the

---

[1] As to Defendant's new argument that other jurors had experiences with crime and that this is evidence that the Government's proffered reason for challenging Ms. Adebamowo was pretextual, it is still plausible that, as the Government argued at trial, the Government considered Ms. Adebamowo's experience with crime—the murder of her young child—to be so grave as to cause them to have concern about how she would consider their case by comparison. The other jurors' experiences with crime did not appear to rise to the level of the murder of a child.

evidence [supporting a district court's finding of no discriminatory intent], the factfinder's choice between them cannot be clearly erroneous."). The Court therefore finds that Defendant's Batson challenge does not present a novel or fairly doubtful question on appeal.

### B. Admission of Banker's Handwritten Notes

Defendant argues that the Court should not have admitted Krunal "Kenny" Banker's ("Banker") handwritten notes, in which he recorded, among other things, the scans referred by each doctor to Orange Community M.R.I. and the amount owed to each doctor in exchange for their referrals for a given month. See Trial Tr. 144-47, Jan. 15, 2014. Defendant did not raise this objection—or any objection to the admission of Banker's notes—at trial. Id. at 147. On appeal, Defendant intends to argue that the notes were improperly admitted as business records under Federal Rule of Evidence 803(6). Def.'s Br. 18-19. The Third Circuit recently reviewed, and rejected, this argument in the appeal of a related case. See United States v. Onyenso, No. 14-3111, 2015 WL 3941446, at *2 (3d Cir. June 29, 2015). There, the Third Circuit held that this Court did not abuse its discretion in admitting Banker's handwritten notes under Federal Rule of Evidence 803(6). Id.

Rule 803(6) provides that business records may be admitted as an exception to the hearsay rule if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . .; and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

F.R.E. 803(6).

Defendant contends that Banker's notes were "not generated as a regular practice of Banker

7

or [Orange Community M.R.I.]," but rather the notes were "generated at the Government's directions while Banker was working as a Government agent." Def.'s Br. 26-27. Thus, Defendant contends, "the method or circumstances of preparation indicate a lack of trustworthiness." Id. However, at trial, Banker laid the proper foundation for the admission of the notes, testifying that he regularly kept the notes in question for over two years, and Defendant indicated "[n]o objection," when the notes were admitted into evidence. Trial Tr. 144-47, Jan. 15, 2014; see United States v. Kaiser, 609 F.3d 556, 575 (2d Cir. 2010) (handwritten notes from phone calls were a regular business practice even if not mechanically generated); United States v. Fujii, 301 F.3d 535, 539 (7th Cir. 2002) (printouts requested by INS were admissible as business records because the data compiled was kept and maintained in ordinary course of business, even though printouts themselves were not kept in ordinary course of business).

Even assuming that this issue had been properly preserved at trial, Defendant's reliance on United States v. Casoni, 950 F.2d 893 (3d Cir. 1991), does not convince the Court that Defendant has presented a novel or fairly doubtful issue as to the admission of the notes. In Casoni, the Third Circuit held that an attorney proffer lacked the requisite trustworthiness to be admissible as a business record because "[i]t was a highly incriminating narrative carefully constructed by skilled criminal defense counsel seeking immunity for his client . . . after [his client's] exposure was apparent," *and* because "the preparation of a proffer for a client seeking immunity can[not] be treated as a record routinely prepared in the 'business' of the practice of law. It is, instead, a product of the advocate's craft . . . ." 950 F.2d at 912-13. Unlike the attorney proffer in Casoni, Banker testified that he kept the records in question as a regular practice *before* cooperating with the Government, the records were not in themselves a tool of legal advocacy but rather were a set of calculations whose accuracy was important to Banker's business, and any potential threat of

untrustworthiness based on Banker's motives was mitigated by Banker's availability to testify and be cross examined at trial. Thus, the Court finds that the admission of Banker's notes does not raise a substantial question of law or fact that is novel or fairly doubtful.

In addition to not being substantial, novel or fairly doubtful, this evidentiary issue is not "so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." Miller, 753 F.2d at 23. At trial, the Government introduced evidence of Defendant's participation in the charged conspiracy in the form of extensive testimony by Banker and Chirag Patel, two cooperating witnesses who testified that they personally conspired to pay kickbacks to the Defendant, and video footage of the Defendant receiving cash in exchange for referrals to Orange Community M.R.I. See, e.g., Trial Tr. 31-32, 58-59, 75, 81, 95-96, 106, 182-84, Jan. 15, 2014; Trial Tr. 107, 139, 143-48, Jan. 28, 2014. The evidentiary ruling complained of was not integral to Defendant's conviction, and the Third Circuit's decision in Onyenso demonstrates that Defendant's argument is not likely to result in reversal of her conviction or a new trial.

### C. Testimony as to Policies Behind the Anti-Kickback Statute

Defendant argues that the trial testimony of Jean Stone, a Government witness, as to the policies underlying the Anti-Kickback Statute, was "wholly irrelevant and highly prejudicial" and that this will present a substantial issue on appeal. Def.'s Br. 22-23. This argument was also addressed, and rejected, by the Third Circuit in Onyenso. 2015 WL 3941446, at *3. The Third Circuit held in that case, where the same witness testified about the purpose behind the Anti-Kickback Statute, that "[i]nforming the jury about the purpose of a statute is permissible," and that the court found no undue prejudice, so "the District Court's admission of Stone's testimony did not amount to an abuse of discretion." Id.

At trial, Ms. Stone, the director for the northeastern integrity office for the Center for Medicare and Medicaid Services in the Department of Health and Human Services, was deemed an expert in "Medicare, including the application process, the claims processing and payment policies." Trial Tr. 66-67, Jan. 31, 2014. Defendant's trial counsel indicated that she did not object to the qualification of Ms. Stone as an expert witness, id., and the Defendant does not argue in the instant motion that Ms. Stone's qualification as an expert was improper.

Rather, Defendant contends the following colloquy between the Government and Ms. Stone during the Government's direct examination was irrelevant under Federal Rule of Evidence 401 and unduly prejudicial:

> Q: Miss Stone, does CMS [Center for Medicare and Medicaid Services] consider a claim induced by a kickback to be false?
> A: Yes.
> Q: And why is that?
> A: Our agency prevents payment for those claims generally for three specific reasons, payment—anything for value for referral of a Medicare patient distorts the doctor/patient relationship. It clouds the medical decision making. It creates an unlevel playing field. It gives unfair disadvantage.
> It unfairly disadvantages providers who are playing by the rules. And offering anything of value for referral of patients increases healthcare costs.

Trial Tr. 90-91, Jan. 31, 2014. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is generally admissible, but if the probative value of evidence is substantially outweighed by a danger of prejudice, the court may exclude relevant evidence. Fed. R. Evid. 402, 403.

The Government argues that it introduced the testimony at issue because it tended to prove the Defendant acted willfully when she accepted kickbacks, in violation of the statement on her Medicare application that she would not "knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare." Opp. Br. 5. The Government sought to clarify for

10

the jury the fact that a Medicare claim induced by a kickback, though not a false claim on its face, was in fact false in the view of the Center for Medicare and Medicaid Services due to the distortions that the agency believes such kickbacks create in the doctor-patient relationship and the market. Id. Defendant now argues that the testimony was irrelevant because the Government could have used the stipulation that the Defendant's Medicare and Medicaid applications were authentic to establish that the Defendant agreed to abide by the terms of the programs. Def.'s Br. 24. However, the testimony at issue was relevant to the element of willfulness because it clarified what exactly it meant to abide or not abide by the terms of the program, by clarifying what was considered to be a "false" claim. The Court found the evidence was relevant, see Trial Tr. 25, Jan. 13, 2014, and it is not a substantial question that is novel or fairly doubtful whether the evidence was relevant to the element of willfulness, especially given that the standard of relevance is not a high bar, see Carter v. Hewitt, 617 F.2d 961, 966 (3d Cir. 1980).

The Court also found on the record that the evidence was not unduly prejudicial. See Trial Tr. 25, Jan. 13, 2014. Under Rule 403, "[t]he judge has discretion to exclude the evidence only if the potential harms 'substantially' outweigh the probative value of the evidence." 22A Kenneth W. Graham, Jr., Federal Practice and Procedure, Evidence § 5214 (2d ed.). "[E]ven if the judge finds the balance favors exclusion, this does not mean that he *must* exclude the evidence; rather he has discretion to exclude it—a discretion that may be used to admit it." Id. The trial judge's discretion to admit evidence is construed "especially broadly in the context of Rule 403." United States v. Mathis, 264 F.3d 321, 326-27 (3d Cir. 2001); see also United States v. Univ. Rehab. Servs. (PA), Inc., 205 F.3d 657, 665 (3d Cir. 2000) ("In order to justify reversal, a district court's [Rule 403] analysis and resulting conclusion must be 'arbitrary or irrational.'").

Here, the Court's analysis and conclusion were not arbitrary or irrational. The evidence at issue had a low potential for unfair prejudice relative to the probative value of clarifying the element of willfulness. The Defendant merely feared that "a juror who may have been burdened by high medical costs becomes prejudiced against the accused because she is charged with a violation of a statute whose purpose that juror has been told is to keep down medical costs and not have unfair competition." Trial Tr. 20, Jan. 13, 2014. The potential for such prejudice was speculative and insubstantial relative to the probative value of the evidence. Moreover, as noted above, the Third Circuit recently rejected the Defendant's argument regarding testimony about the purposes of the Anti-Kickback Statute in Onyenso. 2015 WL 3941446, at *3. Thus, the Court's admission of the evidence does not present a novel or fairly doubtful issue on appeal.

Moreover, for the reasons discussed, *supra*, Section IV.B., in light of the weight of the other evidence against Defendant, this issue was not so integral to Defendant's conviction as to require reversal or an order for a new trial if decided in Defendant's favor on appeal.

## V. CONCLUSION

For the reasons above, the Court denies Defendant's Motion for Bail Pending Appeal. An appropriate order accompanies this Opinion.

DATED: August 10, 2015

_____
CLAIRE C. CECCHI, U.S.D.J.